UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SRIDHAR IYENGAR,

    Plaintiff,

                                         Case No. 08-10778

v.

MERCY MEMORIAL
HOSPITAL CORPORATION,               Hon. John Corbett O'Meara

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's motion for summary judgment, filed March 12, 2009, which has been fully briefed. The court heard oral argument on August 20, 2009, and took the matter under advisement. For the reasons stated in this opinion and order, the court grants Defendant's motion.

**BACKGROUND FACTS**

Plaintiff Sridhar Iyengar is suing his employer, Defendant Mercy Memorial Hospital Corporation, for discrimination based upon age, gender, and national origin because he was not chosen for two promotions. Plaintiff is a 66-year-old East Indian male. He earned a Master's Degree in chemistry from Washington State University and a certification in Nuclear Medicine Technology from the University of Michigan.

In 1979 Plaintiff became the first nuclear medicine technologist at Defendant's facility. As the Nuclear Medicine Department expanded, Plaintiff became the "working supervisor" and eventually the Nuclear Medicine Chief Technologist.

In 2005, Defendant began a reorganization. As part of this, Plaintiff's supervisor, Carl Andersson, was terminated; Ray Palmatier temporarily performed the supervisor's duties.  Cindy Miller, who ran the Respiratory and the Cardiovascular Departments, was asked to oversee the Imaging Department and was granted permission to reorganize the department.  Miller divided the Imaging Department into two groups, each composed of several modalities.  Miller created a Manager for each group and Lead Technologist positions for each modality.  All employees in management positions were removed from their positions and invited to re-bid for any management position.

Accordingly, Plaintiff was demoted from his position as Nuclear Medicine Chief Technologist to a position as a nuclear medicine technologist.  He applied to two positions: Nuclear Medicine Lead Technologist and Special Imaging Manager, the management position for the group that included the nuclear medicine modality.  Plaintiff was interviewed by a committee comprised of Dianna Redman (Diagnostic Imaging Manager, 43-year old Caucasian female), Cindy Miller (51-year-old Caucasian female), and Mike Vallejo (Human Resources Representative, 29-year-old Hispanic male).  Plaintiff was rejected for both positions.

Prem Bhama, a 67-year-old East Indian male, also applied for these two positions and was rejected.  Vallejo's notes from the interview place a star next to Bhama's comment that, if hired, he did not intend to remain for more than five years.  It is unclear whether Bhama volunteered this information or was asked how long he intended to remain.

2

Ultimately, Palmatier was hired as the Special Imaging Manager. While negotiations with Palmatier were continuing, Redman managed both the Diagnostic Imaging and the Special Imaging groups. When negotiations with Palmatier failed, Defendant chose to eliminate the separate management position for the Special Imaging Group and instead left Redman in charge of the entire department. Defendant maintains that Palmatier was hired because of his experience substituting for Andersson during the reorganization. Defendant did not re-open the position after negotiations failed because Defendant felt that Redman had shown that she was capable of successfully managing both departments.

Erin Wesley, an under-40 Caucasian female, was hired as the Nuclear Medicine Lead Technologist. She had previously worked as a nuclear medical technologist with Defendant. Defendant claims that Wesley was chosen because of her plans for improving the nuclear medicine department, her communication skills, her cooperative attitude, and the knowledge she had gained while working with competitive organizations. Although Wesley had previously had issues with tardiness, Defendant believed the situation was under control.

With respect to both positions, Defendant maintains that Plaintiff had not shown himself to be an effective manager while working as the Nuclear Medicine Chief Technologist before the restructuring. Defendant bases this assessment on previous performance evaluations and complaints from patients and staff. Plaintiff maintains that he met or exceeded standards in his overall performance ratings as Nuclear Medicine Chief Technologist.

Plaintiff claims that Defendant's reorganization and subsequent rejection of him for the positions of Nuclear Lead Medicine Technologist and Special Imaging Manager were motivated by discrimination based on age, gender, and/or national origin. Defendant requests summary judgment because Plaintiff cannot establish a prima facie case of intentional discrimination and,

3

even if Plaintiff could, Defendant's reorganization decisions were based on legitimate non-discriminatory reasons. Plaintiff maintains that there are numerous questions of fact, including whether he was a successful manager, whether he has good communication skills, whether he works well with his staff, and whether the hiring panel even considered prior work performance.

## LAW AND ANALYSIS

### I. Legal Standard

Where the evidence is circumstantial, the Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff establishes a prima facie case by showing "(1) membership in the protected class; (2) that [he] suffered adverse employment action; (3) that [he] was otherwise qualified for the position; and (4) following the plaintiff's rejection, the position was filled by a person outside of the protected class." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996).

"If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal citations omitted). "It is important to note that the defendant need not *prove* a nondiscriminatory reason . . ., but need merely *articulate* a valid rationale." *Hartsel*, 87 F.3d at 800 (emphasis in original).

If the defendant provides a legitimate, nondiscriminatory reason, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (internal citations omitted). "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered

4

reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

The *McDonnell Douglas* test described above does not apply if the plaintiff has presented direct evidence of discrimination. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Direct evidence is that which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

## II.     The *McDonnell Douglas* Test Applies.

Without direct evidence of age discrimination, the *McDonnell Douglas* test applies. As direct evidence of age discrimination, Plaintiff offers a notation by Vallejo, one of the interviewers, during an interview with Bhama for the same positions. Vallejo noted that Bhama did not intend to remain more than five years if hired. Vallejo states that he noted this information because Defendant sought a "long-term candidate." Plaintiff makes an inferential leap to imply that Defendant's definition of a "long-term candidate" was based on age; it is just as reasonable to assume that Defendant would not wish to hire a twenty-something who intended to move on from the position in a few years. Additionally, Plaintiff requires an inferential leap between Mr. Bhama's situation and his own: "If [age] was a consideration in Bhama's interview and the decision-making process that followed, it can reasonably *be inferred* that age was a consideration in the Plaintiff's interview and the decision-making process that followed." Pl.'s Br. at 12 (emphasis added). Because there is a need to draw inferences, the notes from Bhama's interview cannot constitute direct evidence of age discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citing *Manzer*, 29 F.3d at 1081).

5

Plaintiff does not claim to present direct evidence of discrimination with respect to either gender or national origin.

### III.     Plaintiff's Prima Facie Case of Age and National Origin Discrimination

It is undisputed that Plaintiff has met three of the four elements of a prima facie case of age discrimination with respect to his demotion from Nuclear Chief Medical Technologist and his subsequent rejections for the positions of Nuclear Lead Medical Technologist and manager of the Special Imaging Group.  A plaintiff establishes a prima facie case by showing "(1) membership in the protected class; (2) that [he] suffered adverse employment action; (3) that [he] was otherwise qualified for the position; and (4) following the plaintiff's rejection, the position was filled by a person outside of the protected class." *Hartsel*, 87 F.3d at 800.  Plaintiff is a member of a protected class because he is over 40.  Plaintiff suffered an adverse employment action: demotion and rejection for advancement.  Both positions were filled by persons significantly younger than Plaintiff.

It is undisputed that Plaintiff has met three of the four elements of a prima facie case of discrimination based on national origin.  Plaintiff is a member of a protected class: East Indian. Plaintiff suffered an adverse employment action: demotion and rejection for advancement.  Both positions were ultimately filled by persons who are outside the protected class.

The parties earnestly debate whether Plaintiff was qualified for either position.  "At the prima facie state, a court should focus on plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. . . the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (emphasis in original).  Plaintiff holds a Master's Degree in Chemistry and a certification

6

in Nuclear Medicine Technology. He has worked for Defendant in the relevant department for nearly thirty years, much of that in a leadership role as the Nuclear Medicine Chief Technologist. Plaintiff appears to have the objective qualifications for the positions.

The parties offer numerous performance evaluations with both positive and negative comments, which the hiring committee may or may not have considered and which may or may not be positive overall, depending upon who is reviewing the evaluations. The parties also offer depositions by members of the hiring committee regarding their personal evaluations of Plaintiff and Plaintiff's own assessment of his performance. However, these are all subjective and therefore immaterial to the determination of whether Plaintiff has established that he was qualified for the purpose of establishing the prima facie elements of his claim.

### IV.     Plaintiff's Prima Facie Case of Gender Discrimination

It is undisputed that Plaintiff has met three of the four elements of a prima facie case of gender discrimination. Plaintiff was a member of a protected class: male. Plaintiff suffered an adverse employment action: demotion and rejection for advancement. As discussed above, Plaintiff is qualified for the position.

A rational trier of fact could not find that Plaintiff has established the fourth criterion, that the position was filled by a person outside of the protected class. The position of Special Imaging Manager, while it existed, was offered to another male, Ray Palmatier. While the position was ultimately filled by a woman, Dianna Redman, the fact that it was offered first to a male in apparent good faith would prevent a jury from finding gender discrimination.

Evidence of discrimination must be considered as a whole. *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1166 (6th Cir. 1996) (upholding a trial court's consideration of evidence of discrimination with respect to the hiring of five white males as a whole and not as separate

7

adverse employment actions). Therefore, that the position of Nuclear Medicine Lead Technologist was filled by a woman, Erin Wesley, must be considered in combination with the fact that the position of Special Imaging Manager was offered to a male. No rational jury could find that Defendant engaged in gender discrimination when Defendant rejected Plaintiff yet offered the positions to members of both genders.

## V.     **Defendant Articulated Legitimate, Non-discriminatory Reasons**

Defendant has articulated a legitimate, nondiscriminatory reason for the reorganization. Miller explained, "It didn't make organizational sense to me on how things were fragmented based on modality as well as title and numbers of employees that those individuals were reporting to." Def.'s Ex. 10 at 8. Plaintiff offers an alternate characterization of Miller's motives: "Miller wanted reshape the Imaging Department to suit her own management style, preferences, prejudices and not be burdened by the old management as it existed prior to her assuming the Director's position." With the exception of the allegation that Miller acted on her own prejudices, it is unclear how any of the other alleged motivations differ from that of any new manager in a discriminatory way. Furthermore, "a reason is legitimate even if it is mean-spirited, ill-considered, inconsistent with humane personnel policies, or otherwise objectionable." *Galbreith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1981).

Defendant has articulated numerous legitimate, nondiscriminatory reasons for rejecting Plaintiff. Performance evaluations discuss Plaintiff's need to improve leadership and management skills. Def.'s Exs. 2, 3, 7 - 9. After observing Plaintiff conduct safety meetings, Miller felt "even though he had the management title, he really did not perform at the management level that my anticipation would have been from previous organizations I had worked at." Def.'s Ex. 10 at 18-19.

8

In addition, several performance evaluations noted numerous and continuing complaints regarding the department while Plaintiff acted as Nuclear Chief Medical Technologist. Def.'s Exs. 4-8. A 2002 memorandum discusses an instance of poor patient care and includes a letter of complaint from the patient's mother. Def.'s Ex. 9.

In contrast, Defendant felt that Erin Wesley possessed the personal qualities they sought in a leader. Miller explained, "She was working at some other competitive organizations, so I felt she had some other current experiences that we could also look at, processes. . . I felt she was very enthusiastic. She had a positive attitude. She appeared to work well with others. . ." Def.'s Ex. 10 at 26-27.

Defendant felt that Ray Palmatier possessed the desired leadership qualities. Miller appreciated his good working relationship with nurses and the emergency department. Id. In addition, Palmatier had already filled the role after Andersson's termination.

Plaintiff objects to Defendant's proffered reasons because Defendant does not point to specific admissible evidence supporting their assessments of the candidates. However, such evidence is not necessary. "It is important to note that the defendant need not *prove* a nondiscriminatory reason . . ., but need merely *articulate* a valid rationale." *Hartsel*, 87 F.3d at 800 (emphasis in original). Defendant has stated a valid rationale; they do not need to do more.

## VI.     Plaintiff Has Failed to Show Pretext

To show that an employer's offered reasons did not actually motivate rejection but were only a pretext, a plaintiff must attempt "to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. . . [i]n order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence." *Manzer*, 29 F.3d at 1084. Taking all of the

9

evidence in the light most favorable to the Plaintiff, no rational jury could find by a preponderance of the evidence that Defendant's proffered reasons for rejection are pretexts.

### A.  Age

Plaintiff offers as additional evidence a notation by Vallejo, one of the interviewers, during an interview with Bhama for the same positions. Vallejo noted that Bhama did not intend to remain more than five years if hired. Plaintiff implies that Vallejo asked this question because he believed a man of Bhama's age would not be a "long-term candidate." Plaintiff admits that he never heard Miller make comments about age and cannot recall Redman or Vallejo making comments about age.

Stray remarks not related to the decision-making process are not evidence of unlawful discrimination. *Hopkins v. Electronic Data Systems Corp.*, 196 F.3d 655, 661 (6th Cir. 1999). The relevance of stray remarks is evaluated by asking whether the remarks were made by the decision-maker or an uninvolved employee, whether the remarks were part of a pattern of biased comments or were isolated, whether the remarks were made near the time of the decision, and whether the remarks were clearly indicative of discriminatory bias or were ambiguous. *Krohn v. Sedgwick James of Michigan, Inc.*, 244 Mich. App. 289, 292 (2001) (summarizing the holdings of the federal courts). Vallejo was a decision-maker. Although Vallejo's notation was made in close temporal proximity to Plaintiff's rejection, it was made about Bhama, another employee altogether. The single notation does not constitute a pattern. Finally, the notation is ambiguous. As noted above, Plaintiff makes an inferential leap to imply that Defendant's definition of a "long-term candidate" was based on age.

A single and ambiguous note made during an interview with another employee is not enough to show by a preponderance of the evidence that Defendant's non-discriminatory reasons are a pretext.

### B. *National Origin*

In addition to the information establishing the prima facie elements of his claim, Plaintiff reports two comments made by Miller regarding the "Third-World:" one at a department meeting and one in reference to Bhama's use of a hanger to support an IV. Plaintiff did not hear any other comments that he interpreted to be derogatory regarding national origin.

Because Plaintiff has not shown a pattern of discriminatory comments and or that the remarks were made in close proximity to the hiring, the remarks regarding the third world should be treated as stray remarks. Stray remarks not related to the decision-making process are not evidence of unlawful discrimination. *Hopkins*, 196 F.3d at 661. Miller was responsible for the hiring decisions. The general remark at a department-wide meaning does not seem to indicate discriminatory bias, although the comment on Bhama's use of a hangar may imply a reference to his national origin. However, two comments do not seem to constitute a pattern. Additionally, Plaintiff has not alleged that the remarks were made near the time of the reorganization or hiring decision.

Without these remarks, Plaintiff has not presented evidence beyond that needed to establish the prima facie elements of discrimination based on national origin.

### C. *Gender*

In addition to the facts Plaintiff sets forth in an attempt to establish the prima facie elements of his gender-discrimination claim, Plaintiff notes that six of six available positions were filled by women. However, four of those positions had only one (female) applicant each.

11

Of the remaining two, one was initially offered to a male, Palmatier. In other words, Defendant offered a position to a man fifty-percent of the time they had the choice to do so.

Plaintiff has not offered any other facts to show that Defendant's proffered non-discriminatory reasons for rejecting Plaintiff were a pretext. Accordingly, the court will grant summary judgment in favor of Defendant.

## **ORDER**

IT IS HEREBY ORDERED that Defendant's March 12, 2009 motion for summary judgment is GRANTED.

Date: August 31, 2009                                    s/John Corbett O'Meara
                                                         United States District Judge



I hereby certify that a copy of this order was served upon counsel of record on this date, August 31, 2009, by electronic and/or ordinary mail.

                                                         s/William Barkholz
                                                         Case Manager

12